# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BIBA KAJTAZI, | : | Hon. Joseph H. Rodriguez |
| Petitioner, | : | Civil Action No. 02-124 |
| v. | : | |
| IMMIGRATION & NATURALIZATION SERVICE, et al., | : | **FINDINGS OF FACT & CONCLUSIONS OF LAW** |
| Respondents. | : | |

This matter is before the Court on Petitioner Biba Kajtazi's January 11, 2002 Petition for a Writ of Habeas Corpus filed under 28 U.S.C. § 2241. The Petition challenges an INS detainer on the ground that Petitioner acquired United States citizenship on July 31, 1985, when his father naturalized. (Pet. at 1, 2, 13 & Ex. 3.)

On March 10, 2003, this Court found that it had jurisdiction over the case based upon the habeas corpus provisions of 28 U.S.C. § 2241, in that because the INS detainer places a future "hold" on Petitioner's release, Petitioner is "in custody" for the purpose of § 2241(c)(3). The Court also held that Petitioner was not required to exhaust administrative remedies available through the BOP, as the Petition challenges the lodging of a detainer by the INS, and the BOP acted merely as the agent of the INS. Nor was Petitioner required to exhaust his citizenship claim before the INS, given that the INS had not initiated removal proceedings.

Citizenship vests automatically upon the occurrence of the conditions specified in former 8 U.S.C. § 1432(a), entitled "Children born outside of United States of alien parents; conditions for automatic citizenship."

> (a) A child born outside of the United States of alien parents, or of an alien parent and a citizen parent who has subsequently lost citizenship of the United States, becomes a citizen of the United States upon fulfillment of the following conditions:
>
> (1) The naturalization of both parents; or
>
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
>
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (repealed effective Feb. 27, 2001).

Accordingly, the Court found that Petitioner would have automatically acquired citizenship under former § 1432(a)(3) if the following conditions were satisfied prior to his eighteenth birthday:

1. Naturalization of the parent, 8 U.S.C. § 1432(a)(3);

2. having legal custody of the child, 8 U.S.C. § 1432(a)(3);

3. when there has been a legal separation of the parents, 8 U.S.C. § 1432(a)(3);

4. naturalization of the parent takes place while the child is under age 18, 8 U.S.C. § 1432(a)(4); and

5. child resides in the United States at the time of the naturalization pursuant to a lawful admission for permanent residence.

8 U.S.C. § 1432(a); Batista v. Ashcroft, 270 F.3d 8, 15 (1st Cir. 2001).

Because the Petition presented a nonfrivolous claim of citizenship under the former 8 U.S.C. § 1432(a)(3), supported "by evidence sufficient, if believed, to entitle [him] to a finding of citizenship," the Court granted an evidentiary hearing to determine his claim of citizenship. This Court held the evidentiary hearing on September 20, 2005 to give Petitioner an opportunity to prove that his parents were legally separated prior to his eighteenth birthday, with Petitioner's father gaining legal custody of him.

## **Findings of Fact**

Petitioner Biba Kajtazi, through a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, claims a right or privilege as a national of the United States.

Petitioner was denied citizenship because the U.S. Consular Office was unable to verify the authenticity of the divorce documents of Petitioner's parents.

There is no evidence that removal proceedings have been instituted against Petitioner.

Petitioner was born March 29, 1968, in Prizren, Kosovo, a territory in the former Yugoslavia presently under United Nations administration. (D-1.)

His parents, Nike Kajtazi and Palina Kajtazi, were born in the former Yugoslavia and married in 1964, prior to Petitioner's birth. (D-1; D-4.)

In 1973, the Kajtazi family – Mr. Nike Kajtazi, Mrs. Palina Kajtazi, and children Josephine, Mira, Biba, Simon, Antoinette, and Carmen – moved to the United States from Kosovo, and lawfully took up permanent residence at 2505 Hoffman Street, in the Bronx, New York. (Tr. 8, 9, 23, 38, 57; D-1.) A seventh child, Filyp, was born in the United States. (Tr. 38; D-1.)

In March of 1984, because of "volatility" in the marriage, the Kajtazi family attorney, Jennie Daniele, prepared a separation agreement for Mr. and Mrs. Kajtazi at their request. (Tr. 70; D-6B.)

Although never signed, the separation agreement indicated that Palina Kajtazi had vacated the family home, and provided that Nike Kajtazi was to retain custody of Petitioner. (D-6B.)

Mrs. Kajtazi later advised Ms. Daniele that the divorce had to be obtained in accordance with Albanian custom, and Mrs. Kajtazi had plans to take those necessary steps. (Tr. 71-72.)

In December of 1984, Nike Kajtazi and his daughter Mira applied for United States citizenship. (Tr. 8, 11; D-1.)

Upset with the fact that Nike Kajtazi had arranged his daughter Mira's marriage to an individual who was a member of the same family their first daughter had married into, Palina Kajtazi left Nike Kajtazi and later presented divorce papers to him when they were both in Kosovo in 1985. (Tr. 12, 40-41, 72.)

Nike Kajtazi testified that he and his wife were divorced in April of 1985. (Tr. 46.)

Palina Kajtazi testified that she obtained a "complete divorce" from the city hall in Yugoslavia. (Tr. 66.)

Documentation has been presented to show that on April 29, 1985, pursuant to Decision No. 53/85 reached by the Municipal Court of Prizren, the marriage of Nike and Palina Kajtazi was dissolved. (D-4; D-5.)

5

It was Albanian tradition that the husband receive custody of all of the minor children. (Tr. 73; D-5.)

Documentation has been presented to show that custody of Petitioner was given to his father. (D-5.)

Petitioner continued to live with his father, Nike Kajtazi, at 2505 Hoffman Street. (Tr. 18, 28, 42, 46, 60, 61.)

Palina Kajtazi did not live with the rest of the family. (Tr. 23, 31, 52, 61.)

On July 31, 1985, Mira Kajtazi was sworn in as a United States citizen. (Tr. 12.) Nike Kajtazi accompanied her to the courthouse, and was able to push up his swearing-in to that same date, rather than August 7, 1985. (Tr. 13, 14; D-3.)

Although Nike Kajtazi was given a questionnaire on July 31, 1985 to update his information, his daughter Mira completed the form for him because he could not read very well or write in English. (Tr. 15, 43, 49.)

To the question that asked whether the applicant had married, or been widowed, separated, or divorced since the initial interview, Mira answered "yes" because her parents were "separated and divorced." (Tr. 17; D-2.) The immigration official changed the answer to "no," however, because Nike could not produce a separation agreement or divorce decree at that time. (Id.)

6

Nike Kajtazi was naturalized on July 31, 1985. (Tr. 39, 53; D-2A.)

Nike Kajtazi's July 31, 1985 Certificate of Naturalization listed his marital status as "Married." (D-2A.)

Sometime in 1986, Palina Kajtazi went to the family lawyer, Jennie Daniele, to obtain custody of her two youngest children, Filyp and Carmen (a/k/a Lydia). (Tr. 62.)

Ms. Daniele prepared a Custody Agreement, which referenced the April 29, 1985 divorce. (Tr. 72; D-6.)

Nike and Palina Kajtazi executed the Custody Agreement on April 29, 1986. (D-6.)

Pursuant to the Custody Agreement, Nike Kajtazi retained custody of Biba Kajtazi, and they continued to reside at 2505 Hoffman Street. (D-6.)

Nike and Palina Kajtazi remarried in Kosovo in 1987. (Tr. 18, 24, 46, 52, 66.)

In 1991, a fire occurred at the residence at 2505 Hoffman Street and many family documents were destroyed or damaged. (D-6A.)

In 1992, Nike Kajtazi obtained documentation of his 1964 marriage, which also indicated that the marriage was dissolved on April 29, 1985. (Tr. 45, 48; D-4.)

In 1993, Palina Kajtazi applied for U.S. citizenship with the help of her daughter, who completed all necessary paperwork. (Tr. 64.)

Palina Kajtazi's Application for Naturalization indicated that she had been married one time, and that she had lived at 2505 Hoffman Street "from 1973 to present." (G-1.)

On March 1, 2001, the San Juan District Office of the INS lodged an Immigration Detainer, Form I-247, against Petitioner at F.C.I. Fort Dix. (Pet. Exh. 8; Answer at 2.)

On July 24, 2001, attorney Jennie Daniele forwarded Petitioner's Application for a Certificate of Citizenship, Form N–600, and a money order in the amount of $160.00 to the New York District Office of the INS. (Pet. Exh. 7.)

Jennie Daniele testified before this Court that in 2001 she saw a document that appeared to be the original divorce decree from Yugoslavia, with an original certified translation on top. (Tr. 77.) She made copies of it for Petitioner's citizenship filing. (Tr. 77.)

In a decision dated July 8, 2003, the Bureau of Citizenship and Immigration Services of the Department of Homeland Security denied Petitioner's N-600 application for a certificate of derivative citizenship. (G-2.)

The decision was based upon findings that the A files of Petitioner's parents indicated, at all relevant times, that their status was "married," and that the divorce decree of Petitioner's parents could not be authenticated. "An overseas investigation by the Consular Section, U.S. Office in Pristina determined that the alleged divorce and custody document was not genuine," as the "Marriage Registry Book in Prizren Municipality" did not contain any divorce record for Petitioner's parents. (G-2; G-4.)

Petitioner was informed that within 30 days he could appeal the decision to the INS Administrative Appeals Unit in Washington, D.C. (G-2.)

On November 5, 2004, the Administrative Appeals Office of U.S. Citizenship and Immigration Services of the Department of Homeland Security[1] rejected Petitioner's December 28, 2003 appeal of the July 8, 2003 decision as untimely. (G-3.) The appeal was not treated as a motion to reopen or reconsider pursuant to 8 CFR § 103.3(a)(2)(v)(B)(2).

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the newly formed United States Department of Homeland Security. The Homeland Security Act of 2002, 6 U.S.C. §§ 101-507, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the INS to the Director of BCIS, 6 U.S.C. § 271(b), and abolished the INS, 6 U.S.C. § 291.

On December 14, 2004, the New York District Office of U.S. Citizenship and Immigration Services, pursuant to 8 C.F.R. § 103.5(a)(5)(ii), on its own motion reopened Petitioner's case. (G-3.)[2]

On February 14, 2005, the New York District Office of U.S. Citizenship and Immigration Services denied Petitioner's Application for a Certificate of Citizenship, finding that Petitioner's parents were still married to each other and had never been divorced when Petitioner turned 18. (G-3.)

Petitioner appealed that decision on March 28, 2005, paying the required filing fee, but his appeal was rejected on March 30, 2005 because he did not file a required cover sheet - the I290B form - along with the brief prepared by Petitioner's Court-appointed attorney. (Tr. 83-84.)

## Conclusions of Law

Upon careful review of the record of this case, and after fully evaluating and weighing the testimony presented, the Court is satisfied that Petitioner met his burden of proof, establishing by a preponderance of credible evidence that he derived United States citizenship in 1985 pursuant to former 8 U.S.C. § 1432(a).

---

[2] Petitioner argues that only the AAO in Washington, D.C., as the "official who made the latest decision in the proceedings," would have jurisdiction to reopen the case under 8 C.F.R. § 103.5(a)(ii).

See <u>Berenyi v. District Director, INS</u>, 385 U.S. 630, 637 (1967) (the burden of proof of eligibility for citizenship is on the applicant); 8 C.F.R. § 341.2© (Petitioner's burden is by a preponderance of the evidence).

Petitioner has shown that: (1) his father was naturalized on July 31, 1985 after an April 29, 1985 legal separation from his mother; (2) his father was naturalized on July 31, 1985 before Petitioner turned eighteen on March 29, 1986; (3) Petitioner was residing in the United States as a permanent legal resident at the time of his father's naturalization on July 31, 1985; and (4) his father had legal custody at the time of his naturalization on July 31, 1985.  See <u>Bagot v. Ashcroft</u>, 398 F.3d 252, 257 (3d Cir. 2005) (outlining requirements for derivative citizenship under 8 U.S.C. § 1432(a)).

The Court has considered and rejects the Government's argument that this Court does not have jurisdiction over the case because Petitioner should take further steps to exhaust his administrative remedies.  Under 8 U.S.C. § 1503(a),

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department . . . on the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 . . . for a judgment declaring him to be a national of the United States. . . .  An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege . . . .

The Third Circuit has explained, "The Immigration and Nationality Act requires that a person with [a claim of derivative citizenship] initially apply to the Immigration and Naturalization Service for a Certificate of Citizenship. . . .  If the applicant is denied a certificate, he or she may then initiate a declaratory judgment action in federal court under section 1503(a)."  United States v. Breyer, 41 F.3d 884, 891-92 (3d Cir. 1994).

Petitioner submitted an N-600 application for a certificate of derivative citizenship, and on July 8, 2003, the Bureau of Citizenship and Immigration Services of the Department of Homeland Security denied the certificate.  (G-2.)  Petitioner also attempted to take the issue one step further at the administrative level, but his appeal was rejected.  The Court finds that the July 8, 2003 decision, coupled with the rejection of Petitioner's appeal from that decision, constitutes a "final administrative denial" sufficient for the Court to entertain this action.

Turning to the heart of the case, the Government has conceded that Petitioner "presented testimony and documentary evidence which, if credible, would appear to support Petitioner's claim that he is entitled to derivative citizenship."  (Government's post-hearing submission, p. 5.)  Nonetheless, the Government maintains that the Kajtazis were not legally separated in 1985.

The Board of Immigration appeals had concluded that a "legal separation" was either a limited or absolute divorce obtained through judicial proceedings, Matter of H--, 3 I. & N. Dec. 742, 1949 WL 6533 (BIA Sept. 22, 1949), but more recently deemed it appropriate to look to State law for a definition of "legal separation," see In re Bulfa-Dadulo, No. A44 273 047, 2004 WL 1059577 (BIA Mar. 16, 2004) (unpublished decision) (looking to Washington State law to determine whether parents were "legally separated").  See also Bagot, 398 F.3d at 254 (looking to State law for guidance in defining "legal custody").  Additionally, the Second Circuit has acknowledged that "the separation at issue may well have been secured in a foreign nation that provides nonjudicial procedures for divorce or separation.  A divorce or separation obtained in accordance with the laws of the nation having jurisdiction of the marriage should constitute a "legal separation" within the meaning of § 1432(a)(3), regardless of whether the procedures of that nation conform to those employed in the states of the United States."  Brisett v. Ashcroft, 363 F.3d 130, 134 n.3 (2d Cir. 2004) (disagreeing with the premise that only a judicial decree of separation suffices as a legal separation, and stating that  a divorce or a legal separation recognized by the State with jurisdiction over the marriage would clearly suffice).  But see Nehme v. INS, 252

F.3d 415, 422 (5th Cir. 2001) (finding that, while State law may inform the formulation of a federal standard, the law of no one state should govern the definition of "legal separation," which is uniformly understood to mean judicial separation).  See also Black's Law Dictionary 1369 (7th ed. 1999) (defining "separation" as "[a]n arrangement whereby a husband and wife live apart from each other while remaining married, either by mutual consent or by judicial decree; the act of carrying out such an arrangement. – Also termed legal separation; judicial separation.").

Petitioner has argued, without citation to authority, that "under New York law, if one spouse abandons the other for one year or more or separates, it is considered a legal separation."  The Court has found no such State definition.  See also Board of Trustees of Equity-League Pension Trust Fund v. Royce, 1999 WL 587796, *2 n.4 (S.D.N.Y. Aug. 5, 1999) (New York law has not defined "legally separated").  The Court may take guidance, however, from the policy goal delineated by the Third Circuit in defining "legal custody" – ensuring that the child's real interests are with the custodial parent in the United States.  Bagot, 398 F.3d at 259.

Even if the Court were to require a judicially sanctioned separation, Petitioner has produced a document indicating that his parents were divorced on April 29, 1985. The authenticity of this document was not substantially challenged at the evidentiary hearing. Mindful that the state of affairs in Kosovo has made it difficult, if not impossible, to obtain records,[3] the Court is not persuaded that the documentation in the record of this case is fraudulent. Nor does the Court find that the credibility of the witnesses has been undermined by Mrs. Kajtazi's Application for Naturalization, on which she indicated she had been married only once.

Rather, mindful that they may have an interest in the outcome of this case, the Court accepts the testimony of the witnesses, who have told one consistent version of the events surrounding the marriage of the Kajtazis. The Government submitted only a fax correspondence to the effect that the registrar on the 1992 record, Selim Kastrati, allegedly could not be confirmed as ever having worked as a registrar in Prizren, and when a US Consular Investigator checked the

---

[3]Petitioner, through his Court-appointed attorney, was able to obtain documentation from a United Nations official in Kosovo that it is unlikely that anyone will ever be able to obtain pre-conflict records to substantiate the legal separation of Petitioner's parents because those public records have been either lost or destroyed in the political upheaval in the former Yugoslavia.

marriage registry there, he found no record of the Kajtazi divorce. On the other hand, the fact that the Kajtazis entered into a Custody Agreement in 1986, adjusting the arrangements presumed by the laws of Kosovo, corroborates Petitioner's contention that there was indeed a legal separation.

Accordingly, the Court finds that there was a legal separation of Petitioner's parents, and Nike Kajtazi was granted legal custody of the Petitioner and his minor siblings, prior to July 31, 1985 when Nike Kajtazi was naturalized. As these events occurred prior to Petitioner's eighteenth birthday, Petitioner automatically acquired United States citizenship at that time.

## Conclusion

Based on the foregoing,

IT IS ORDERED on this 14th day of October, 2005 that Petitioner's application for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, is hereby <u>GRANTED</u> based on the Court's finding that Petitioner acquired United States citizenship on July 31, 1985, when his father naturalized.

/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ, U.S.D.J.